IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02539-MSK-STV

TERRI EDDY,
REBECCA ESQUIBEL,
DENITA HARTZOG,
GIOVANNA KEMP,
LISA MAES,
PEGGY MAJOR,
COURTNEY MICKELSON,
SADIE MONTANO,
PAULA PURDY,
STACI WRIGHT,
SAMONE WALKER,
DASHAWN WALKER,
THERESA DENBOW,
CESQUA RASMUSSEN,
RHONDA CASADOS, and
CESQUA RASMUSSEN

Plaintiffs,

v.

CITY AND COUNTY OF DENVER, DENVER SHERIFF DEPARTMENT,

Defendant.

_____

**PLAINTIFFS' MOTION TO EXCLUDE WITNESSES AND EXHIBITS THAT WERE NOT TIMELY DISCLOSED AND FOR A PROTECTIVE ORDER**
_____

The above-named Plaintiffs, by their undersigned counsel, respectfully move the Court to enter an Order pursuant to Fed.R.Civ.P. 37(c)(1) precluding Defendant from using at the trial of this matter thirty-nine witnesses and scores of exhibits, all of which Defendant failed timely to disclose as required by Fed.R.Civ.P. 26(a)(1). Plaintiffs further

1

move for entry of a protective order prohibiting Defendant from using documents which were not timely disclosed in any remaining deposition in this matter.

The undersigned counsel certifies that he conferred regarding these issues by telephone with Defendants' counsel of record, primarily Jessica Allen, Esq. The parties were not able to resolve the issues raised by this Motion, and Ms. Allen indicated that Defendant will oppose the relief requested herein.

## INTRODUCTION

Defendant, the City and County of Denver ("Denver"), placed fifty-one individuals on the Joint Witness List submitted with the parties' proposed Final Pretrial Order on May 23, 2018 [ECF No. 119-1]. Of those, forty-six – ninety percent of the total - were first disclosed by Denver as potential witnesses in May of 2018. This was nine months *after* the end of discovery in this matter. Denver likewise placed on the parties' Joint Exhibit List [ECF No. 119-2] sixteen exhibits clearly consisting of or containing documents which Denver improperly failed to produce, and has newly produced several hundred pages of additional documents, many of which appear to be included into various compilation exhibits Denver intends to offer at trial.[1] All of these witnesses and all of these documents were known to Denver throughout the pendency of this case, such that they should have been disclosed with Denver's initial disclosures, or at the latest within a reasonable time thereafter. Denver's flagrant disregard of its disclosure obligations was not substantially justified, and allowing Denver to now use these previously undisclosed witnesses and

---

[1] In addition, many exhibits listed by Denver consist of a category of unspecified documents, and it is unclear to what extent Denver intends to include in these compilations documents which it did not timely disclose.

exhibits would be far from harmless. Accordingly, under Fed.R.Civ.P. 37(c)(1), Denver should be barred from using the bulk of those witnesses and all of those exhibits at trial.

In addition, Denver recently and unfairly used documents which it had not disclosed – despite a Court order compelling their production – in the deposition of Susan Jones, Ph.D., one of Plaintiffs' expert witnesses in this case. Plaintiffs seek a protective order prohibiting Denver from further use in depositions of documents it did not timely produce.

## STANDARD OF REVIEW

Rule 26(a)(1)(A) requires every litigant to identify those witnesses and documents which it "may use to support its claims or defenses, unless the use would be solely for impeachment." Such initial disclosures are to be complete based on reasonable inquiry. Fed.R.Civ.P. 26(g). Parties are thereafter required to supplement those disclosures on an ongoing basis during the course of litigation. Fed.R.Civ.P. 26(e)(1). The presumptive sanction for failing to make disclosures as required by Rule 26 is an order excluding the undisclosed evidence:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (3), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c)(1). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

## BACKGROUND

This action is brought by fifteen women, each currently or formerly employed by Denver as a Deputy in its Sheriff Department (collectively, the "Deputies"). Two of the

Deputies initiated this action by filing their Complaint on November 18, 2015 [ECF No. 1]. In that Complaint, they alleged the very claims for relief on which Plaintiffs now proceed to trial. *See* Complaint, at Third and Fourth Claims for Relief. By August 12, 2016, fourteen of the Deputies had become parties plaintiff to this action and filed their Second Amended Complaint [ECF No. 65]. The Deputies' allegations have remained unchanged since that date, other than by the subsequent joinder of the final plaintiff [ECF No. 88].

### A. Denver's Disclosure of Witnesses and Identification of Trial Witnesses.

Pursuant to the original Scheduling Order, [ECF # 29], the parties' initial Rule 26(a)(1) disclosures were due on March 4, 2016. Denver's initial disclosures identified six witnesses, in addition to the original plaintiffs in this action. *See* Denver's Initial Disclosures, attached as Exhibit 1. As extended, the period allowed for discovery stretched for over sixteen months, and did not conclude until July 3, 2017 [ECF # 81]. The parties conducted over two dozen depositions during this time.

During the discovery period Denver supplemented its Rule 26(a)(1) disclosures on twenty-one separate occasions, with a twenty-second following shortly thereafter. *See* Denver's Twenty-Second Supplemental Disclosure, attached as Exhibit 2. On each of these occasions, Denver identified only additional documents; not once did it disclose any additional witnesses.

Following discovery, Denver filed a Motion for Partial Summary Judgment [ECF No. 93], on which the Court ruled on April 3, 2018 [ECF No. 113]. As of that ruling, it remained the case that Denver had identified only six individuals as fact witnesses on whom they might rely in this case, in addition to the original plaintiffs. Then, between May 1 and May 23, 2018, Denver newly identified scores of additional fact witnesses in a wave

of further supplemental disclosures. Almost all of these were sworn officers currently or until recently employed by Denver in the Sheriff's Department, most of them command staff or sergeants, and the few others were medical staff who worked in Denver's correctional facilities. Accordingly, all have been known and available to Denver throughout this litigation. Denver placed forty-six of these newly disclosed individuals on the Joint Witness List submitted by the parties with their proposed Final Pretrial Order. Attached hereto as Exhibit 3 is a summary of the witnesses which Denver placed on the Joint Witness List, separately listing (a) those which it timely disclosed, (b) those which it did not timely disclose, but which Plaintiffs do not seek to preclude, and (c) those which it did not timely disclose, and which Plaintiffs do seek to exclude.

**B.     Denver's Disclosure of Documents, Identification of Trial Exhibits, and Prejudicial Use of Documents Not Timely Disclosed.**

The wave of supplemental disclosures by Denver in the month preceding submission of the proposed Final Pretrial Order included disclosure of over 5,500 pages of documents. Indeed, such disclosures have continued as recently as May 30, 2018, the day before this filing. Many of the newly-disclosed documents were created after the close of discovery, and this Motion is not concerned with those documents.[2] However, also included were several hundred pages of documents that can, and should, have been disclosed during discovery. Sixteen of the trial exhibits identified by Denver included or consist entirely of these belatedly-disclosed documents. A list of these exhibits is attached hereto as Exhibit 4. In addition, of the scores of compilation exhibits which Denver listed, but as to which it does identify the specific documents which will comprise the exhibit,

---

[2] Plaintiffs do question the relevance of most of those more recent documents, but that is an issue for another day.

5

more than thirty appear likely to encompass belatedly-produced documents. *See* Exhibit 4.

Most troubling are belatedly produced "offense in custody" reports, by which deputies reported inmate misconduct using the Sheriff Department's electronic incident tracking system, referred to as the "TAG system." During discovery, Plaintiffs served requests for production seeking production of all records in the TAG system relating to incidents that met various criteria. After Denver failed to respond adequately or timely to those requests, Plaintiffs filed a Motion to Compel [ECF No. 69, which was granted in part. Specifically, on December 28, 2016, Magistrate Judge Varholak ordered that:

> Within three weeks, Defendants shall produce all information within the Sheriff Department's TAG system related to those incident numbers provided by the Plaintiffs. This information would include all staff reports [and] all CAB proceedings . . .

[ECF No. 78].

Plaintiffs' counsel expended a great deal of time preparing various summaries of the documents produced by Denver in response to these document requests and the Court's Order. Plaintiffs provided some of the summaries they prepared for the expert witnesses they retained, and those experts relied to some extent on these summaries. *See* Summary of OIC Reports, attached as Exhibit 5.

On May 3, 2018, Denver took the deposition of Dr. Jones, the first of Plaintiffs' liability experts to be deposed. During that deposition, Denver's counsel confronted Dr. Jones with documents which counsel asserted demonstrated that the summaries on which Dr. Jones had relied were incomplete and therefore inaccurate. *See* Excerpts of Jones Depo., attached as Exhibit 6, at 228:21-230-13; 244:14-246:18. The documents with which Denver confronted Dr. Jones were documents that Denver had been ordered

6

by this Court to produce on December 28, 2016. Instead, Denver produced them in a dump of over 2,000 pages of documents on May 1, 2018, nine months after the close of discovery, and two days before Dr. Jones' deposition, and then sought to profit from its own violation of Court order by impeaching Dr. Jones for not having taken account of the documents it had not produced.[3]

## ARGUMENT

### A.  Denver's Failure to Disclose Timely Was Not Substantially Justified.

"'For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance.'" *Smith v. Aurora Pub. Sch.*, 318 F.R.D. 429, 432 (D. Colo. 2016), *quoting Poitra v. Sch. Dist. No. 1*, 311 F.R.D. 659, 668 (D. Colo. 2015). During conferral on this Motion, counsel for Denver offered no justification for failing to disclose ninety percent of the fact witnesses on whom they anticipate relying at trial, and many of the documents on which they intend to rely, until long after the close of discovery. With respect to witnesses, the most charitable possible explanation it that Denver simply failed to give any meaningful thought to the witnesses on whom it might rely, until the Court's ruling on Denver's Motion for Partial Summary Judgment turned Denver's thoughts to trial. Any other plausible explanation for such systematic non-disclosure involves outright bad faith. With respect to failure to produce documents which this Court already had ordered Denver to produce, Plaintiffs frankly have no idea what justification Denver can or will offer.

---

[3] Denver confronted Dr. Jones with previously unproduced documents concerning incident nos. 27963, 27965, 29792, and 44720. See Deposition Exhibits 264, 271, attached hereto as Exhibit 7. Each of these was on the list incidents supplied by Plaintiffs to Denver pursuant to the Court's discovery order. See Exhibit 8 hereto

Although parties are under a continuing duty to supplement their initial disclosures, that does not mean that a litigant can simply wait until a pretrial order is due to determine what witnesses and documents it may rely on in the case, and therefore avoid the obligations to disclose those witnesses and documents at the outset of discovery as required by Rule 26(a)(1). This would defeat the very essence of that rule, which is to require disclosure of this information at the outset of discovery, before even waiting for service of formal discovery requests. For example, "one of the main purposes of the requirement to disclose witnesses 'that the disclosing party may use to support its claims or defenses' is to 'assist other parties in deciding which depositions will actually be needed.'" *Smith*, 318 F.R.D. at 431, *quoting* Advisory Committee Comments to 1993 Amendments. Hence, "[b]efore making its disclosures, a party has the obligation under subdivision (g)(1) to make a reasonable inquiry into the facts of the case." Advisory Committee Notes to Fed.R.Civ.P. 26, 1993 Amendment.

Denver's conduct in this case compares unfavorably with that at issue in *Smith* – and even in *Smith* that conduct was not substantially justified. There, the plaintiff submitted with her summary judgment response affidavits seven witnesses she had not previously disclosed. Judge Martinez found that the Plaintiff's failure to disclose those witnesses earlier was not substantially justified:

> Counsel's position, above, is that all of these people were already known to all parties, but counsel also confirms that she learned of these seven individuals' alleged experiences only while preparing her summary judgment response. The Court cannot credit the implication that, despite counsel's best efforts, she belatedly learned that all seven could be potential witnesses in her client's support. Rather, it appears that summary judgment proceedings forced counsel to finally focus on the merits of the case and prompted further investigation. Accordingly, the Court finds that Smith was not substantially justified.

8

*Smith*, 318 F.R.D. at 432 (internal record citations omitted). Here, there can be no justification for Denver's failure to disclose forty-six witnesses, all individuals professionally affiliated with Denver's Sheriff Department, at any point prior to the end of the lengthy discovery period in this action. Likewise, there can be no justification for Denver's failure to disclose several hundred pages of documents on which it now seeks to rely, including many which it was specifically ordered to produce a year and a half ago.

### B. Denver's Failure to Disclose Was Not Harmless.

During conferral, Denver did assert that its failure to disclose was harmless, because Plaintiffs knew of the existence of each of the individuals and some of the documents belatedly disclosed. That is utterly beside the point. Given the number of Plaintiffs and the nature of their claims, literally every employee of the Denver Sheriff Department and every inmate housed by the Denver Sheriff Department over the past several years is a person who might have some knowledge relevant to this litigation. However, Rule 26(a)(1) does not require disclosure of everyone with some potentially relevant knowledge; rather, it requires disclosure of those individuals and documents on whom a litigant might rely in the litigation. Plaintiffs' collective knowledge of the existence of all the various individuals employed by the Sheriff Department gave them no notice of which of those individuals Denver anticipated relying on this case.

Again, Judge Martinez's discussion in *Smith* is on-point:

> The information in question is not of the individual's existence or potential body of knowledge, but that the opposing party might call the individual as a witness. "[K]nowledge of the existence of a person is distinctly different from knowledge that the person will be relied on as a fact witness." *Auraria Student Hous. At the Regency, LLC v. Campus Vill. Apartments, LLC*, 2014 WL 2933189, at *2 (D. Colo. June 30, 2014). . . .
>
> This is not a minor consideration. If one party lists a potential witness on its Rule 26 disclosures, the other parties know that they might see or hear that

9

> person's testimony for the first time at summary judgment or trial. The other parties can then make a calculated decision whether to seek discovery from that person and thereby mitigate the possibility of surprise, or, on the other hand, whether the expense of deposing that individual outweighs the consequences of potential surprise later. Obviously a party is deprived of this choice if the person is never listed as a potential witness.
>
> This holds true even when all parties are aware of other individuals who might have relevant knowledge. Again, the rule requires parties to disclose those whom they "may use to support [their] claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Each party is entitled to presume that the other party understands and will comply with this rule. ***If, for example, all parties become aware that John Doe possesses knowledge that may support the plaintiff's claim but the plaintiff does not supplement its Rule 26 disclosures to name John Doe as a potential witness, the other parties are generally entitled to presume that the plaintiff has, for some reason, decided not to use John Doe's testimony in support of its claims***. Under that presumption, the other parties can plan their discovery strategy accordingly.

*Smith*, 318 F.R.D. at 431-32 (emphasis added; footnotes omitted).

Here, Plaintiffs went through almost a year of discovery in ignorance of almost the entire list of individuals Denver belatedly would identify as potential trial witnesses. With limited exceptions, it would be preposterous to claim that was harmless. The first exception is that Plaintiffs took the depositions of six of the forty-six witnesses at issue, and do not claim that they were harmed by Denver's failure to disclose these six individuals as witnesses on whom it might rely.[4] Second, Denver identified Christine Heidinger as "solely for authentication of documents if documents not stipulated to," and Plaintiffs do not claim they will be harmed if Ms. Heidinger is called solely for this purpose. Plaintiffs would be harmed by allowing Denver to call any of the remaining thirty-nine witnesses which it failed to disclose during the discovery period.

---

[4] The six are Captain Kenneth Juranek, Sergeants Joseph Bowen, Charles DeNovellis, Jeremy Heinrichs, and Victor Lombardi, and Nissa Mills.

Moreover, Plaintiffs already have been prejudiced by Denver's failure to disclose documents pursuant to Rule 26 – many of which it also had been ordered by this Court to produce. In essence, what happened here is:

- The Court ordered Denver to produce "all information within the Sheriff Department's TAG system related to" a list of incident numbers to be provided by Plaintiffs, specifically including "all CAB proceedings;"

- As to several of the listed incident numbers, Denver instead produced only some of the available records, generally omitting records relating to CAB hearings;

- Plaintiffs prepared extensive summaries based on the records produced, assuming them to be complete, as ordered;

- Plaintiffs' experts relied on those summaries in their analysis; and

- Denver then produced the remaining records in a document dump two days before the first deposition of an expert (and almost a year and a half after its ordered production), and ambushed the expert with the fact that the summary she had relied on was "inaccurate" in its failure to reflect that some incidents had resulted in CAB proceedings.

That is not harmless error, it is deliberately gaining an advantage by failing to meet disclosure obligations or comply with court order.[5]

Plaintiffs also are prejudiced by the sheer volume of untimely disclosures. On May 30, 2018, Denver served Plaintiffs with it's with its Thirtieth Supplemental disclosures, and ninth in little more than a month. Just this latest supplement included over three hundred documents, dating back to 2012, and raises the total produced in the past few weeks to almost five thousand pages of documents, to go along with the forty-six new witnesses. Allowing Denver to use all of this material (which apparently still has no end in sight)

---

[5] The duty to disclose is triggered not just by anticipated used at trial. "The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example." Advisory Committee Notes to Fed.R.Civ.P. 26, 2000 Amendment.

would place on Plaintiffs an unreasonable burden, at this late stage, in reviewing and analyzing all of this material, updating their own prior analyses to incorporate it, having their experts do the same, and conducting countless depositions, the testimony from which their experts also would need to incorporate into their analysis, all while Plaintiffs should be preparing for trial.

### C. Exclusion is Appropriate.

Under Rule 37(c)(1), the default consequence of a failure to disclose is that the party which failed to disclose a witness or document in compliance with Rule 26(a)(1) is precluded from using that witness or document, "on a motion, at a hearing, or at a trial." However, the court is granted discretion to impose other sanctions, in addition to or instead of excluding the evidence. Fed.R.Civ.P. 37(c). Those other sanctions include, but are not limited to, ordering payment of reasonable attorney fees and other expenses caused by the failure. *Id.* In exercising its discretion, the district court should be guided by the following factors:

> (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Woodworker's Supply*, 170 F.3d at 993.

Based on discussions in conferral, Plaintiffs expect that Denver will argue that prejudice may be cured by giving Plaintiffs leave to depose its newly-disclosed witnesses out of time. If this were a typical instance in which a litigant disclosed one or two secondary witnesses after the close of discovery, Denver's position might be accurate. Under these frankly extraordinary circumstances, it is not, for at least three reasons.

First, "delay and mounting attorneys fees can equate to prejudice." *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, No. 10-CV-02516-WJM-KLM, 2014 WL 2933189, at *3 (D. Colo. June 30, 2014), *citing Sender*, 225 F.R.D. at 656; *see also Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir.1993). Giving Plaintiffs an effective opportunity to depose the thirty-nine newly disclosed witnesses at issue would be tantamount to a complete redo of the discovery period, as many months would be required and massive expense incurred. Doing so "would be an insult to the spirit of Fed.R.Civ.P. 1, which requires construction of the Federal Rules 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Auraria Student Hous.*, 2014 WL 2933189, at *3 (concluding that even though prejudice "might be curable, doing so under these circumstances is unreasonable and unwarranted"). In *Auraria Student Housing*, Magistrate Judge Mix concluded:

> Allowing Plaintiff to call the thirteen witnesses listed in the Final Pretrial Order would necessitate the re-opening of discovery, in order to permit Defendant to prepare a defense regarding these witnesses' testimony. As such, the Court finds that the first factor weighs in favor of excluding the disclosures, because Defendant is indeed prejudiced, in terms of time, money, and effort, by the delayed issuance of Plaintiff's disclosures.

*Auraria Student Hous.*, 2014 WL 2933189, at *3. Likewise, in *Gallegos v. Swift & Co.*, Chief Judge Babcock concluded that "[p]roviding Swift the opportunity to cure this prejudice would mean reopening discovery and postponing the trial, options that are expensive and untenable at this stage of the proceeding." *Gallegos*, No. 04-CV-01295 LTBCBS, 2007 WL 214416, at *3 (D. Colo. Jan. 25, 2007) (excluding newly disclosed evidence, even in the absence of any evidence of bad faith).

Second, between sheer numbers and review of Denver's recitation of facts and evidence in the proposed PTO, it appears that the bulk of the testimony on which Denver

intends to rely at trial will come from witnesses who were not timely disclosed. Plaintiffs should have had an opportunity to discover what those witnesses will say before, for example, their experts reviewed the available evidence and issued lengthy reports and before Plaintiffs themselves committed to very detailed positions in responding to summary judgment. Every decision Plaintiffs have made in this case was made on an understanding of the universe of potential evidence, and that understanding will become woefully incomplete, through no fault of Plaintiffs, if Denver are allowed to interject scores of new witnesses and hundreds of pages of new exhibits into this case at this late date. Allowing Plaintiffs to depose these witnesses and review these documents now will do nothing to cure the prejudice caused when, to take one pertinent example which already has occurred, their experts are attacked by Denver for having formed opinions based on evidence rendered incomplete by Denver's own misconduct.

Finally, the Court should not exercise its discretion to relieve Denver of the consequence of its actions, for policy reasons. Regardless of whether Denver acted in bad faith, it unquestionably acted in flagrant disregard for its obligations under Rule 26. "To suggest that sanctions are not appropriate simply because the trial court can provide a further extension of time or delay the trial would effectively reward [its] non-compliance." *Sender v. Mann*, 225 F.R.D. 645, 657 (D. Colo. 2004). Denver "should not be permitted to ignore [its] disclosure obligations throughout the discovery period and then avoid sanctions simply by claiming his deficiencies were not willful." *Id.*

In the alternative, should the Court allow Denver to use any of its late disclosed witnesses at trial, Plaintiffs request both leave to take that witnesses deposition, and an order requiring Denver to reimburse Plaintiffs for all attorney fees and costs, including the

14

court reporter's fees, incurred by Plaintiffs in connection with each such deposition. In less severe cases, where it is possible and reasonable to avoid prejudice through allowing depositions, such an award of fees and costs is appropriate:

> Recognizing the additional costs that inevitably result from inefficient discovery, I will also require, as an appropriate sanction for Sender's failure to comply with disclosure obligations under Rules 26(a)(1) and 26(e)(1), that Sender pay the fees and costs for one attorney representing the Freeborn Defendants to participate in those depositions, up to a maximum of $3,000 per deposition.

*Sender*, 225 F.R.D. at 658. *See also Smith*, 318 F.R.D. at 433 (allowing the plaintiff to use five of the seven witnesses she first disclosed in responding to summary judgment, allowing the defendant to depose those five witnesses, and requiring the plaintiff to pay the defendant's costs for three of those depositions).

### D. Entry of a Protective Order is Appropriate.

Defendants have asked to take the depositions of each of Plaintiffs' experts out of time, and Plaintiffs have not objected to that request. Thus far, only the deposition of Dr. Jones has occurred, and the depositions of Robert Worley, Mark McNulty, and Jeff Nehls have yet to occur. In order to avoid Denver gaining unfair advantage by its failure to timely disclose documents, including especially those which it had been specifically ordered to produce, a protective order should enter under Fed.R.Civ.P. 37(b)(2) prohibiting Denver from making use in any deposition of any document which it first produced after January 1, 2018.

### E. Plaintiffs Should be Awarded the Attorney Fees They Have and Will Incur in Connection With This Motion.

Rule 37(b) and (c) both authorize an award of fees and costs in favor of a party who successfully seeks relief for failure to comply with discovery and/or disclosure

obligations. Such an award is appropriate here, given Denver's flagrant disregard of those obligations.

WHEREFORE, Plaintiffs respectfully move the Court to enter an Order: (1) precluding Defendants from offering at trial the testimony of any of the thirty-nine witness listed under heading C of Exhibit 3 attached hereto; (2) in the alternative, as to any those witness not precluded by the Court, (a) granting Plaintiffs leave to take the deposition of that witness prior to trial and (b) awarding Plaintiffs all costs and attorney fees they reasonably incur in connection with such deposition; (3) precluding Defendants from offering at trial any of the documents identified on Exhibit 4 hereto as exhibits and any testimony regarding such documents; (4) prohibiting Defendants from using at any deposition in this case any document which existed prior to the discovery cutoff, but which Denver did not produce until after the discovery cutoff; and (5) awarding Plaintiffs the attorney fees they reasonably incurred in connection with this motion, with Plaintiffs granted leave to submit a separate Affidavit of Fees within twenty-one days, if the parties are not able to agree on their amount.

DATED at Denver, Colorado this 31st day of May 2018.

*s/ Brian T. Moore*
Brian T. Moore
JESTER, GIBSON & MOORE, LLP
1999 Broadway, Suite 3225
Denver, CO 80202
(303) 377-7888
bmoore@jgllp.com

Wilbur C. Smith, P.C.
5353 Manhattan Circle, Suite 202
Boulder, CO 80303
303-565-0512
wil@civilcriminal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May 2018, a true and correct copy of the foregoing **PLAINTIFFS' MOTION TO EXCLUDE WITNESSES AND EXHIBITS THAT WERE NOT TIMELY DISCLOSED AND FOR A PROTECTIVE ORDER** was filed with the Clerk of the United States District Court for the District of Colorado using the CM/ECF system, and served upon the following:

Jessica Runyan Allen
Denver City and County Attorney's Office
201 West Colfax Avenue
Denver, CO 80202-5332
720-913-8422
720-913-3182 (fax)
jessica.allen@denvergov.org

Natalia Solis Ballinger
Denver City Attorney's Office-West Colfax Avenue
201 West Colfax Avenue
Denver, CO 80202-5332
720-913-4893
720-913-8413 (fax)
natalia.ballinger@denvergov.org

Shelby Fenton
Denver City Attorney's Office-West Colfax Avenue
201 West Colfax Avenue
Denver, CO 80202-5332
720-913-8413 (fax)
shelby.felton@denvergov.org

Wilbur C. Smith, Jr.
Wilbur C. Smith, P.C.
5353 Manhattan Circle
Suite 202
Boulder, CO 80303
303-565-0512
wil@civilcriminal.com

            *s/   Cristina Tostado*
            Cristina Tostado, Paralegal