IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02539-MSK-STV

TERRI EDDY,
REBECCA ESQUIBEL,
DENITA HARTZOG,
GIOVANNA KEMP,
LISA MAES,
PEGGY MAJOR,
COURTNEY MICKELSON,
SADIE MONTANO,
PAULA PURDY,
DASHAWN WALKER,
SAMONE WALKER,
STACI WRIGHT,
THERESA DENBOW,
CESQUA RASMUSSEN, and
RHONDA CASADOS

      Plaintiffs,

v.

CITY AND COUNTY OF DENVER, DENVER SHERIFF DEPARTMENT,

      Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE
WITNESSES AND EXHIBITS AND FOR A PROTECTIVE ORDER**

---

Defendant, City and County of Denver, Denver Sheriff Department ("the City"), responds

to Plaintiffs' Motion to Exclude Witnesses and Exhibits and for a Protective Order, as follows:

**<u>INTRODUCTION</u>**

The Court should deny Plaintiffs' Motion to Exclude because it is based upon a false

premise that the witnesses and documents at issue were unknown to them. While the City concedes

it made several supplemental disclosures pursuant to Fed. R. Civ. P. 26(e) since April 2018, there is substantial justification for the timing of the disclosures, and Plaintiffs already knew about and had access to the vast majority of the witnesses and documents. Plaintiffs have suffered no harm.

Plaintiffs are not entitled to a protective order preventing the City from using documents disclosed in recent supplements in depositions of Plaintiffs' experts, which are still ongoing. Plaintiffs  conceal the real reason they seek a protective order, *i.e.*, to prevent their experts from being impeached with an incomplete, summary document created by Plaintiffs' counsel and relied upon by their expert witnesses.  Plaintiffs incorrectly assert that had the documents disclosed recently been disclosed prior to the close of discovery, the course of discovery in this case would have been drastically different, thus rendering the summary chart they provided their experts accurate.

Plaintiffs are also not entitled to strike the City's recently disclosed witnesses. The supplemental witness disclosures were done out of an abundance of caution, even though most of the witnesses were listed by Plaintiffs in their pleadings and disclosures, and were discussed extensively during Plaintiffs' depositions.  Plaintiffs' assertion that these witnesses were unknown to them prior to the City's recent disclosures is disingenuous.

Any alleged prejudice can be cured prior to trial.  While Plaintiff seeks the most extreme sanction available to the Court, striking the City's trial exhibits and witnesses and awarding sanctions, the appropriate remedy, if any, is that Plaintiffs be granted leave to take additional depositions.  The City has already informed Plaintiffs' counsel it does not oppose Plaintiffs taking additional depositions.

## <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 26(e)(1)(A) states:

A party who has made a disclosure under Rule 26(a) …. *must supplement or correct* its disclosure in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing*.  (Emphasis added.)

Rule 26 is governed by a "common sense" standard.  *Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004).  Because Rule 26(e) does not define "in a timely manner," that provision must be applied in accordance with the particular facts and circumstances of each case.  *Poitra v. Sch. Dist. No. 1 in the Cty. of Denver*, 311 F.R.D. 659, 666 (D. Colo. 2015) citing *United States v. Guidant Corp.*, No. 3:03-0842, 2009 WL 3103836, at *4 (M.D. Tenn. Sept. 24, 2009).

Federal Rule of Civil Procedure 37(c)(1) states:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the *failure was substantially justified or is harmless*.  (Emphasis added.)

A discovery violation is excused if it is justified or harmless.  *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).  A party's failure to disclose is substantially justified where the party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance.  *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. July 27, 1995).  Factors to be considered in determining whether a late disclosure is harmless include:  (1) the prejudice and surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the non-moving party's bad faith or willfulness.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).  "Failure to comply with the mandate of

[Rule 26(a) and (e)] is harmless when there is no prejudice to the party entitled to disclosure."
*Portia*, 311 F.R.D. at 669.

## BACKGROUND

I.     **The Parties Disclosures.**

   A.     The Parties' Witness Disclosures Prior to The End of Discovery

When this case was first filed, there were only two plaintiffs, Samone and Dashawn Walker. Defendant served its Initial Disclosures, identifying eight (8) fact witnesses, and making the following additional general witness disclosures:

   9.     Any person identified or disclosed by Plaintiff.

   10.    Any person identified or disclosed by any other Defendant.

   11.    Any person necessary for impeachment or rebuttal.

   12.    Any person necessary to lay foundation.

   13.    Any person whose identity is revealed during discovery.

*See* Exhibit A, Defendant's Initial Disclosures.

Plaintiffs took a slightly different approach, listing 57 fact witnesses in their initial disclosures. *See* Exhibit B, Plaintiffs' Initial Disclosures. Six months later, Plaintiffs served their Second Initial Disclosures, disclosing 93 fact witnesses. *See* Exhibit C. All of the fact witnesses have an almost identical designation. *Id.*

   B.     The City's Document Disclosures Prior to the end of Discovery

The City has produced almost 200,000 pages of documents in this case, 186,476 of which were disclosed by the end of the discovery period.

The City produced documents in several large categories[1]. These include, but are not limited to:

1.    OIC and CAB documents[2]

- Plaintiffs intend to use these to show they made complaints of being sexually harassed by inmates and the City failed to take appropriate action.

- Plaintiffs also intend to use these to show the City knew or should have known of a general atmosphere of sexual harassment.

- Plaintiffs' experts rely on these documents to reach their conclusions. Specifically, Plaintiffs' counsel has prepared a spreadsheet (herein, "Summary Spreadsheet") which summarizes certain OIC reports and CAB documents, selected by Plaintiffs' counsel, which Plaintiffs' experts cite in their reports and depositions.

- Early in the case, Plaintiffs requested documents in discovery reflecting alleged sexual harassment by male inmates toward female deputies. The City responded by stating that it was unable to search for documents as requested, as they were not indexed in any manner that would allow them to be searched by gender of inmate or deputy. However, in order to satisfy Plaintiffs' request, Defendant searched for all OICs that included sexual words such as "bitch,"

---

[1] This discussion is relevant because, as will be shown below, the City's supplemental disclosures are almost entirely supplements to these categories.

[2] OIC reports are generated by deputies to document complaints about inmate misbehavior or violations of inmate conduct rules. When an inmate is disciplined, a CAB report is generated by supervisory staff to document the action taken against the inmate because of the conduct alleged in the OIC report. Not every OIC report has a corresponding CAB report.

"whore," "harass," etc. These documents have been referred to as the "word search documents."

- Plaintiffs asserted that the City's document production was not complete, as the OIC reports were not full reports and CABs were not attached. Plaintiffs filed a motion to compel, and at the hearing on the motion, the City agreed to produce full OIC reports and CABs for any and all report numbers requested by Plaintiffs. The Court incorporated this agreement into its Order. *See* ECF No. 78.

- Based on the "word search" documents produced by the City, Plaintiffs then submitted nine "batch" reports, Excel Spreadsheets that contained lists of report numbers. In total, Plaintiffs requested over 750 OIC reports and CABs which comprised thousands of pages. Defendant produced all of the requested documents.

- Later in the case, Plaintiffs made Defendant aware that all of the word search documents were generated from reports from the County Jail, and that the same search needed to be run for the Denver Detention Center (DDC). Plaintiffs' counsel made a written request for specific word searches to be run for reports written at the DDC, and that full OIC reports and CAB documents with those words be produced. The City agreed to run the search and produced the documents.

- Defendant produced the OIC reports for all Plaintiffs without a discovery request. Each Plaintiff had access to her own OIC reports, but for the

convenience of the parties and to assist the Plaintiffs who were no longer employees of the department, Defendant produced all of Plaintiffs' reports.

2.   Leave records

- These documents show when Plaintiffs were off of work for FMLA leave or were on modified duty, resulting in them not having to work with inmates.

3.   Departmental Policies and Procedures

- These are policies and procedures relevant to the case such as sexual harassment policies, the inmate handbook, etc.

4.   RFMS Shift Documents

- These documents demonstrate where deputies worked their shifts. They were relied upon by Plaintiffs' statistician expert who used them to reach his opinions about Plaintiffs' alleged disparate treatment. These documents are cumbersome and difficult to understand, with approximately 50 documents per day being used to delineate shift assignments. This system was replaced in 2016 by the Telestaff system (see below).

5.   Telestaff Documents

- In 2016, the Denver Sheriff Department moved to the Telestaff system, which tracks employees' leave and shift records in a user-friendly format. These documents show both when a deputy worked and the deputy's duty assignment. Deputies have access to their own Telestaff records.

C.       City's Recent Supplemental Document Disclosures

 After the Court issued its Amended Order on Summary Judgment [ECF No. 113] on April 3, 2018, the City began supplementing its disclosures in preparation for the depositions of Plaintiffs' experts.  The City also wanted to ensure that it supplemented the various categories of documents that had already been produced in this case during 2015-2016 (all but two of the 15 Plaintiffs were deposed prior to February 2017).  Thus, the City supplemented its disclosures for the 2017-2018 period.  The City's disclosures were justified because the parties agreed to conduct expert depositions after the ruling on dispositive motions issued, as reflected in the Amended Scheduling Order [ECF 61, § 6.f.1], and because the City had a duty to supplement with documents not already produced or which had not yet been created at the time of its original disclosures.[3]

Instead of reviewing the documents to gain an understanding of the limited universe of documents listed in the supplemental disclosures, Plaintiffs have thrown up their hands, refused to review the material, failed to update their Summary Spreadsheet, and instead, filed the instant Motion seeking sanctions and the most extreme remedy available, excluding the material from trial.  Had Plaintiffs done their due diligence, they would have discovered that the City merely updated categories of documents already produced and that the timing of the supplemental disclosures is harmless.

D.       Timeline of Pertinent Case-Related Dates and the City's Supplemental Disclosures

The following is a timeline of dates important to a determination of whether the City's supplemental disclosures are substantially justified or harmless.

**Nov. 18, 2015**          Plaintiffs' original Complaint filed.  [ECF #1.]

---

[3] Had the City not supplemented its disclosures, it likely would have faced a similar motion for sanctions from Plaintiffs for not having disclosed documents.

| | |
|---|---|
| **Aug. 8, 2016** | Amended Scheduling Order issued stating "[T]he parties agree to defer expert depositions until after summary judgment motions are adjudicated by the Court." [ECF #61, p. 15.] |
| **Aug. 12, 2016** | Plaintiffs' Second Amended Complaint filed. [ECF #65.] |
| **Nov. 16, 2016** | Plaintiffs filed a motion to compel seeking OIC and CAB records of incidents of sexual harassment. [ECF #69.] |
| **Dec. 28, 2016** | Hearing held on Plaintiffs' motion to compel. Order issued stating "[D]efendants shall produce all information within the Sheriff Department's TAG system related to those incident numbers provided by the Plaintiffs. This information would include all staff reports, all CAB proceedings, and to the extent any documents exist on this, whether the deputy assigned pursued the charge." [ECF #78.] |
| **Jan. 24, 2017** | City disclosed documents responsive to Court's order on Plaintiffs' motion to compel. [City's Thirteenth and Fourteenth Supplemental Disclosures dated Jan. 24, 2017 and Jan. 27, 2017 respectively.] |
| **Apr. 3, 2017** | Plaintiffs' experts disclosed, including reports, but excluding documents relied upon by experts. |
| **May 2, 2017** | Defense counsel requested materials relied upon by Plaintiffs' expert Susan Jones, Ph.D., as referenced in her expert report. |
| **May 3, 2017** | Plaintiffs produced 74-page spreadsheet summary of 781 OIC and CAB reports drafted by Plaintiffs' counsel and provided to Dr. Jones by Plaintiffs' counsel. |
| **May 24, 2017** | Order granting the motion to join Rhonda Casados as a plaintiff and extending the discovery cutoff to August 17, 2017. [ECF #87] |
| **June 16, 2017** | Last fact witness deposition taken (Plaintiff Casados). |
| **July 31, 2017** | City's rebuttal expert witness disclosures. |
| **Aug. 3, 2017** | City's partial motion for summary judgment filed. [ECF #93.] |
| **Aug. 17, 2017** | Discovery cutoff. |

| **April 3, 2018** | Order granting in part and denying in part the City's partial motion for summary judgment issues.  [ECF #113.] |
| **May 3, 2018** | Plaintiffs' expert Dr. Jones  deposed. |
| **May 7, 2018** | Plaintiffs' expert Robert Worley  deposed. |
| Undetermined | Defendant has made multiple requests to depose Plaintiffs' remaining two experts (an economist and a statistician) but Plaintiffs have refused to provide dates for the depositions. |

E.      The City Supplemented its Document Disclosures After the Discovery Cutoff with Documents Recently Created and Documents Identified in Preparation for Depositions of Plaintiffs' Experts.

The City supplemented its document disclosures after the discovery cutoff, in order to disclose newly-created documents, to correct prior disclosures, and in preparation for the upcoming expert depositions.  Despite the fact that the City properly disclosed thousands of pages to supplement its prior production, Plaintiffs now cherry-pick the documents which they would like to prevent the City from using at trial.  For example, with regard to recently-disclosed department policies, Plaintiffs request exclusion of Exhibit 69 (a more recent version of the Open Door Policy than they disclosed earlier in the case), Exhibit 70 (Modified and Limited Duty Policy) and Exhibit 72 (all versions of the Cross-Gender Supervision policy in effect between 2012-2016, including versions previously disclosed by both parties and versions not previously disclosed by either party); however, Plaintiffs do not ask the Court to exclude Exhibit 63 (updated DSD Inmate Handbook), Exhibit 64 (all versions of the policy related to Transfers and Reassignments within the Department), Exhibit 66 (updated Equal Opportunity Safety Policy); and Exhibit 67 (updated Inmate Discipline Policy).  The Court should reject Plaintiffs' attempt to arbitrarily exclude documents Plaintiffs deem to be evidence helpful to the City.

The Court should deny Plaintiffs' request to completely exclude the following documents (as listed in the left-hand column of Plaintiffs' Exhibit 4).[4]

| POLICIES | | |
|---|---|---|
| Ex. 69 | Denver Sheriff Department Open Door Policy, DO 1.00.5005, revised April 21, 2017 | Plaintiffs produced an earlier version of the Open Door Policy as part of their Initial Disclosures. The City supplemented its disclosures in order to provide the more recent 2017 version and in preparation for Dr. Susan Jones' deposition (one of her opinions relates to the open door policy). This revision of the policy was created after Dr. Jones issued her report. Moreover, the ten (10) Plaintiffs still employed by the City received notice that these new policies were in place and had access to them. All new policies and procedures are distributed to deputies through a document management system named "Power DMS," which requires deputies to review all new policies and certify that they have done so. Therefore, at a minimum, Plaintiffs who still work for the Denver Sheriff Department have known about this revised policy and have had access to it since the date of its issuance, and they cannot be prejudiced from its recent disclosure. |
| Ex. 70 | Denver Sheriff Department Modified and Temporary Limited Duty Policy | The City listed this exhibit in error and will withdraw it. |
| Ex. 72 | Department Order Nos. 2025.1D, 2025.1E, 2025.1F, 2025.1G and 2025.1H re Assignment of Staff – Cross-Gender Supervision | This exhibit includes all versions of the cross-gender supervision policy for the period 2012-2016. Plaintiffs already produced version 2025.1F in their Initial Disclosures on March 3, 2016 (26_000442-445), and the City disclosed version 2025.1G in its Initial Disclosures on March 4, 2016 (DENVER 000054-57). The additional versions were disclosed and included in the exhibit to ensure completeness for the relevant period. As discussed above, Plaintiffs were aware of, and had access to, these policy revisions. |

---

[4] In order to respond to Plaintiffs' allegations that Defendant acted in bad faith by making all of its recent disclosures, Defendant explains at Exhibit D why the disclosures were made, document by document, even though Plaintiffs only specifically request the exclusion of the following documents.

| TELESTAFF REPORTS | | |
|---|---|---|
| Exhibits 152, 158, 183, 198, 212, 263, 282, 319 and 376 | 2016-2018 Telestaff reports for Plaintiffs S. Walker, Denbow, Esquibel, Hartzog, Maes, Wright, Montano, Casados and D. Walker | Telestaff reports are documents regarding when and where deputies, including Plaintiffs, were assigned to work. Telestaff was implemented at the Denver Sheriff's Department in 2016. The City originally disclosed documents on November 16, 2016 for all Plaintiffs reflecting leave they took between 2012 and 2016 using an older, pre-Telestaff, less user-friendly form of documents (see Defendants' Ninth Supplemental Disclosures, DENVER 8755-9215). The City also produced Telestaff rosters for all employees in 2016 in its Sixteenth Supplemental Disclosures.<br><br>The 2016-2018 Telestaff reports recently produced were *per plaintiff* and should not be excluded for several reasons:<br><br>1. Telestaff documents for 2016 for all deputies were already produced. Thus, the recent supplemental disclosures of 2016 Telestaff documents per plaintiff includes information already produced to Plaintiffs in a different format as part of the disclosure of all Telestaff records.<br><br>2. Plaintiffs have access to their own Telestaff records, and therefore they have not been prejudiced because they have the same access to the information.<br><br>3. Documents created after the end of the discovery period (after August 2017 through 2018) could not have been disclosed prior to the end of the discovery period.<br><br>4. Plaintiffs' statistician expert witness, who Plaintiffs rely on for their disparate treatment claims, relied heavily on pre-Telestaff documents reflecting shifts worked by Plaintiffs and all employees. The Telestaff documents supplement those documents.<br><br>5. If Plaintiffs intend to claim damages for their disparate treatment claim for the period 2016-2018, then documents related to shifts they worked during that period are highly relevant and should not be excluded. |

| REMAINDER/MISCELLANEOUS | | |
|---|---|---|
| 124 | Training PowerPoint Presentation: "Conflict Management-Revised 2007" | This document was produced prior to the end of the discovery period as part of Defendant's Twenty-First Supplemental Disclosures on June 16, 2017. (*N.B.: Plaintiffs misstated the Bates number range of this document in Exhibit 4 to their Motion to Exclude as DENVER 185034-195052 (over 10,000 pages); in fact, the document is DENVER 185034-185052 (only 18 pages)*). |
| 120 | Summary of documents produced in 14th Supplemental Disclosure at Category 297 and 27th Supplemental Disclosure at 389 related to DDC | This exhibit is a summary of documents produced in two different disclosures. On January 19, 2017, Plaintiffs' counsel requested that Defendant perform a search of OIC and CAB reports based on specific words. The City timely disclosed those documents in its Fourteenth Supplemental Disclosure on January 27 2017. Then, in its recent Twenty-Seventh Supplemental Disclosure, without a request from counsel, Defendant supplemented the documents originally disclosed in 2017 with documents created between January 27, 2017 and April of 2018. The summary described in this exhibit is a summary of the properly disclosed documents, as the recent disclosure is simply an update to documents already produced. |
| 141 | Inmate Desmond Jones' OIC and CAB reports | In preparation for Dr. Jones' deposition last month, Defendant reviewed Plaintiffs' 74-page Summary Spreadsheet of 781 OIC and CAB reports drafted by Plaintiffs' counsel. The City noted there were eight reports regarding inmate Desmond Jones. The City researched this inmate and learned there were another thirteen incidents involving this inmate. The City supplemented its disclosure of the prior eight reports already included in the Summary Spreadsheet with the additional thirteen reports it discovered in preparation for deposing Dr. Jones because Dr. Jones relied so heavily on the Summary Spreadsheet. In so doing, the City inadvertently disclosed documentation for three incidents that had previously been disclosed (Incident Nos. 53807, 54976, and 61235). |
| 142 | Inmate Keith Hill's OIC and CAB reports | Similarly, the Summary Spreadsheet prepared by Plaintiffs' counsel identified twelve incidents involving inmate Keith Hill. The City researched this inmate and learned there was another incident involving this inmate. Therefore, the City supplemented its disclosure of the prior twelve (12) reports, already included in the Summary Spreadsheet, with the additional report at DENVER 066103. The City also inadvertently disclosed an incident |

| | | involving inmate Hill that had already been disclosed, Incident No. 68521. |
| --- | --- | --- |
| 341 | For Information Only Report No. 78528 | This document was timely disclosed a year ago in Defendant's Twenty-First Supplemental Disclosure dated June 16, 2017. |
| 364 | For Information Only Report No. | This document was timely disclosed well over a year ago in Defendant's Thirteenth Supplemental Disclosure dated January 24, 2017. |

The Court should also refuse Plaintiffs' request to exclude portions of exhibits listed in the right-hand column of Exhibit 4 of Plaintiffs' Motion to Exclude. Essentially, Plaintiffs ask the Court to exclude any OIC report created by any Plaintiff, or CAB document related to the OIC report created by any Plaintiff, that was disclosed after the end of the discovery period.[5] This request should be denied for several reasons. First, each individual Plaintiff's OIC reports and associated CABs were produced earlier in the case prior to their depositions being taken with one exception – Plaintiff Paula Purdy. Defendant realized very recently that Plaintiff Purdy's OIC reports and CAB documents had not been produced with the other Plaintiffs' reports and, therefore, produced those in the recent disclosures to correct the error. Plaintiffs never contacted Defendant to point out that error or to ask that Plaintiff Purdy's OIC reports and CAB documents be produced as all the other Plaintiffs' documents had been produced. This is particularly significant because Defendant produced each Plaintiffs' OICs and CABs voluntarily and without a discovery request. Moreover, each Plaintiff has access to her own OIC reports and could have obtained them sooner if needed.

---

[5] The 30 exhibits listed in the right column of Plaintiffs' Exhibit 4 are (1) selected OIC/CAB reports for each Plaintiff; and (2) a summary of all OIC/CAB reports for each Plaintiff.

The recent supplemental production of the Plaintiffs' OIC reports and CAB documents simply serves to supplement the production made in 2016 prior to each of the Plaintiff's depositions. Many of the incidents described in the reports do not relate to sexual misconduct by inmates, yet in an abundance of caution, Defendant decided to go ahead and produce all recent OICs and CABs to ensure that all documents created by Plaintiff had been disclosed.

## ARGUMENT

### I.      The City's Supplemental Document Disclosures are Substantially Justified and Harmless.

Many of the documents the City produced in its supplemental disclosures were created after the discovery cutoff. The City cannot produce what does not exist. Plaintiffs do not challenge the supplemental disclosures to the extent they include documents created after the close of discovery. Motion, p. 5. There is no disagreement the City was substantially justified in the timing of its supplemental disclosures related to those documents.[6] Thus, with regard to Plaintiffs' OIC and CAB documents, it appears that Plaintiffs only object to those created before the August 2017 discovery cutoff but which were produced after the cutoff. This is a very limited group of documents, as the City produced all of Plaintiffs' OICs and CABs (sans Plaintiff Purdy as discussed above) up to the date on which they were produced in the litigation (some point in 2016 or 2017 before each Plaintiff's deposition).

Plaintiffs also misrepresent the universe of documents the City was ordered to produce in response to Plaintiffs' Motion to Compel. During the Motion to Compel hearing, Defendant agreed

[6] Further, it is unclear whether Plaintiffs are claiming a continuing hostile work environment and discrimination during the years 2016-2018. To the extent they are not, a significant number of documents disclosed in the City's supplemental disclosures become irrelevant and the City will not need them for trial.

to produce complete OIC reports and CAB documents for whatever documents Plaintiff requested. While Plaintiffs allege the order compelled disclosure of *all* OIC and CAB reports, the Order confirmed the City had to produce reports related to specific incidents as would be requested by Plaintiffs. *See* ECF No. 78. After the Order issued, the Plaintiffs requested nine "batches" of documents, totaling over 750 distinct reports and CABs, comprising thousands of pages of documents. The City produced all these requested documents prior to the discovery cutoff.

Indeed, despite asserting multiple times in their Motion that the City violated the order on the motion to compel, at no time since that order issued did Plaintiffs request further disclosure, or questioned the propriety of the City's disclosures in response thereto. Plaintiffs could have used their 74-page Summary Spreadsheet to identify possibly missing information, *i.e.*, entries showing an OIC report, but no corresponding CAB report, just as easily as the City did. *See* Exhibit 7 to Plaintiffs' Motion to Exclude, which demonstrates how additional documents may have been referenced in the documents requested by Plaintiffs and produced by the City. The Court did not order the City to produce documents referenced within the Batch documents, but only the documents themselves. Plaintiffs could have and should have reviewed the documents to see what additional documents were referenced and/or needed when they summarized them in the Summary Spreadsheet for their expert witnesses. Instead, this exercise was undertaken by the City in April 2018, in preparation for Plaintiffs' experts' depositions. At that time, the City discovered the need to supplement its disclosures.

The City's recent supplemental disclosures are also harmless because Plaintiffs could have, and indeed did, search and obtain OIC reports themselves, as evidenced by their own disclosure of OIC reports. To the extent they claim prejudice due to alleged untimeliness of the City's

supplemental disclosures, Plaintiffs could have likewise done their due diligence to identify a significant portion of the supplemented documents.

Plaintiffs' claim of late disclosure is also disingenuous because they made their own supplemental disclosure after the close of discovery. (*See* Exhibit E, Plaintiffs' Fifth Supplemental Disclosure dated October 19, 2017). Moreover, Plaintiffs take issue with the City's compilation exhibit of OIC/CAB reports to the extent it contains documents from the City's Supplemental Disclosures even though Plaintiffs give the very same description for their Exhibit 3 in the joint exhibit list attached to the Proposed Final Pretrial Order.

Plaintiffs produced the Summary Spreadsheet of OIC/CAB reports as a document their lawyers created and which was relied upon by two of their experts. The chart was produced after all but one of the fact witnesses had been deposed and, therefore, was not relevant during fact discovery. The timing of the City's supplemental disclosures relating to the chart were justified because expert depositions were delayed until well after the close of discovery. Plaintiffs were not harmed or prejudiced by the timing of the disclosures, as shown by the explanation of the documents above and in Exhibit D. Both sides will rely on OIC and CAB reports at trial. If Plaintiffs want to recover damages for 2016, 2017 and 2018, then both sides should be allowed to use OIC reports and Telestaff documents that relate to, and were created during, those years. The City did its diligence in preparation for Plaintiffs' expert depositions. The City should not be penalized for its reasonable and appropriate actions.

## II.        The Court Should Deny Plaintiffs' Request for a Protective Order.

Plaintiffs' expert, Dr. Jones, testified in her deposition just last month that she relied substantially on the Summary Spreadsheet. However, she did not know who created the

spreadsheet, how it was created, why certain documents were included, whether there were inaccuracies in the spreadsheet, etc. During the deposition, Defendant used OIC and CAB reports to impeach her expert opinions by showing the Summary Spreadsheet was incomplete and incorrect.[7] Plaintiffs now seek a protective order to prohibit the City from using any document it disclosed after January 1, 2018, in subsequent expert depositions.[8] Plaintiffs conceal the real reason they seek a protective order, which is to prevent their experts from being impeached with documents demonstrating the Summary Spreadsheet is wholly unreliable. Nonetheless, two of the Plaintiffs' experts' depositions have already been taken, and therefore the issue of a protective order as to those two experts – Drs. Jones and Worley – is now moot.

Despite numerous requests from undersigned defense counsel to provide dates for the depositions of Plaintiffs' remaining two experts, Plaintiffs have not responded other than to state those experts have requested the depositions be taken at their office. Plaintiffs have failed to state how any of the recently supplemented documents would prejudice them in deposing their experts. If the two remaining experts (one who will opine on damages and one who will opine on statistics and Plaintiffs' disparate treatment claim) have not reviewed any documents included in the supplemental disclosures, then they can just say so in their depositions. Moreover, rather than waiting for the Court to rule on a motion, Plaintiffs could and should provide any documents they deem relevant to their experts. However, in light of the fact that Defendant has not disclosed any documents relevant to Plaintiffs' calculation of damages, Plaintiffs request for a protective order

---

[7] This issue will be addressed further in the City's Rule 702 Motion challenging Plaintiffs' experts.
[8] Plaintiffs misrepresent to the Court that the City has requested to take depositions of Plaintiffs' experts "out of time." The parties relied upon Section § 6.f.1 [ECF No. 61] of the Scheduling Order that allowed for expert discovery to occur after the dispositive motion was decided. Both sides took expert depositions after the Rule 56 order issued. Plaintiffs deposed the City's expert, Dr. Laura Bedard, on May 21, 2018.

is disingenuous.[9]  Similarly, Plaintiffs have not described how any of the recently-disclosed documents could or would affect their statistical expert's analysis.[10]

Plaintiffs have simply refused to undertake the task of updating the data they provided their experts.  They failed to compare the data they provided their experts with the City's disclosures in this case.  A protective order is inappropriate and unnecessary.

### III.     The City's Supplemental Witness Disclosures are Substantially Justified and Harmless.

The witnesses disclosed by the City in its supplemental disclosures after the discovery cutoff were known to Plaintiffs as persons with information related to the case.  The vast majority of the witnesses were people who were disclosed by Plaintiffs early in the case, deposed already by Plaintiffs, discussed by Plaintiffs in their depositions, and/or referenced in documents in the case.

By its plain terms, Rule 26 does not require supplemental disclosures in all circumstances, but rather only when "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A); *see also U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, LTD*, 582 F.3d 1131, 1145 (10th Cir. 2009); *Sender*, 225 F.R.D. at 656 ("a failure to disclose witness information is harmless if the

---

[9] This is especially true given that Plaintiffs have not themselves supplemented their damage expert's report to reflect damages for 2017 or 2018 or revised damages for Plaintiff Courtney Mickelson, who left DSD but found employment with the Adams County Police Department in 2017.  At a minimum, her future wage damages are affected, yet Plaintiffs have failed to supplement their discovery responses with information related to Ms. Mickelson or supplement their damage expert's report.

[10] Each of Defendant's supplemental disclosures describes the documents disclosed by group/category (e.g. "OIC reports for Plaintiff Denbow" or "Telestaff Documents for Plaintiff Casados").  Therefore there is no surprise as to what supplemental documents were produced and Plaintiffs do not have to wade through the documents to determine the nature thereof.

other party was well aware of the identity of the undisclosed witness and the scope of their relevant knowledge well before trial" (quoting 6-26 Moore's Federal Practice – Civil § 26.27)).

A principal theory in Plaintiffs' case is that supervisors did not respond appropriately to Plaintiffs' complaints of inmate sexual harassment and, had supervisors responded with appropriate disciplinary measures, Plaintiffs would not have been sexually harassed by male inmates. A significant portion of each Plaintiff's deposition was devoted to discussing particular incidents wherein Plaintiffs felt their complaints went unaddressed by DSD management. Plaintiffs identified supervisors to whom they complained and discussed the action or alleged inaction taken by the supervisor. Plaintiffs testified certain supervisors made discriminatory post assignments. Plaintiffs also testified that certain supervisors told them not to write reports. The City has compiled the disclosures, documents and deposition references where these witnesses were disclosed, and included them in a chart attached as Exhibit F.

The Advisory Committee notes explicitly recognize that the "otherwise made known" exception can apply "when a witness not previously disclosed is identified during the taking of a deposition." Fed. R. Civ. P. 26(e) Advisory Committee Notes to the 1993 Amendments; *see also Llewellyn v. Allstate Home Loans, Inc.*, 795 F. Supp. 23 1210, 1220 (D. Colo. 2011) (defendants could not claim prejudice by declaration of undisclosed witness attached to summary judgment response, where defendants learned during plaintiff's deposition that witness had discoverable information and they did not depose the witness). Many of the supervisors listed in the City's supplemental disclosures were not only known to Plaintiffs as far back as the time when the alleged discriminatory conduct occurred, but they were specifically discussed during Plaintiffs' depositions. Ex. F. This is not a passing or oblique reference to an individual during a deposition.

*Cf. Poitra v. Sch. Dist. No. 1*, No. 14-cv-00887-WYD-CBS, 311 F.R.D. 659, 667 (D. Colo. Dec. 21, 2015). Instead, the substance of the discussion at the Plaintiffs' depositions functionally identified the witnesses. *Llewellyn*, 795 F. Supp. 2d at 1220.

There is no prejudice or surprise because Plaintiffs themselves identified many of the same witnesses in their own disclosures (*see* Ex. F), and, therefore, had information about the relationship of these individuals to the events at hand.

> [W]hen a fact witness is disclosed, all parties are on notice that the disclosing side contends the witness has relevant knowledge. All are thus on notice that the disclosing side may well have interest in the witness and may have even obtained a statement. That would be normal practice. *Disclosing that fact would only disclose what should be presumed by prudent counsel*. All parties are free to contact the fact witness and obtain their own statements.

*Intel Corp. v. VIA Techs., Inc.*, 204 F.R.D. 450, 452 (N.D. Cal. 2001) (emphasis added). In *EEOC v. Outback Steak House*, the court found the plaintiff's disclosures sufficient where defendants "had in their possession significant information about each of the witnesses …." No. 06-cv-01935-EWN-KLM, 2008 WL 3992172, at *14 (D. Colo. Aug. 20, 2008).

Finally, the identity of these witnesses was disclosed in the many OIC and CAB reports produced prior to the discovery cutoff, demonstrating the involvement of these same witnesses in the incidents forming the basis for Plaintiffs' claims. Ex. F.

For these reasons, it is disingenuous for Plaintiffs to feign ignorance of the existence of the witnesses listed in the supplemental disclosures and the knowledge they possess. As shown in Ex. F and described herein, Plaintiffs knew of these witnesses and the information they possessed. Moreover, Plaintiffs knew that certain witnesses had knowledge of relevant facts without being disclosed by Defendant. For example, Plaintiffs requested and took the depositions of several

supervisors and other witnesses who Defendant did not disclose (e.g. former Sgt. Mills, Sgt. Bowen, Sgt. Lombardi, Sgt. Juranek, Sgt. Penson and Sgt. Denovollis).[11]

Plaintiffs chose not to conduct discovery as to the witnesses discussed at length during their depositions and in documents, which makes their challenge to the witnesses' inclusion in the Pretrial Order even more outrageous. They simply have not been prejudiced by the City's witness disclosures. *See Adams v. Cline Agency, Inc.*, No. 10-cv-02758-WJM-KLM, 2013 WL 2444696, at *3 (D. Colo. June 5, 2013) (suggesting that any prejudice claimed by defendants as a result of plaintiffs' untimely disclosure was mitigated when defendants declined to seek discovery of such evidence despite sufficient knowledge that it existed; the court found that "[d]efendants bear some responsibility for their asserted lack of 'adequate opportunity to prepare a defense for any such undisclosed evidence.'"). The City's supplemental witness disclosures are substantially justified.

## IV.     Plaintiffs' Request for Sanctions is an Unjustified Remedy.

In the event the Court deems the City's disclosures prejudicial to Plaintiffs, the commonly favored remedy under similar circumstances is to reopen discovery for depositions. *See Johnson v. Sch. Dist. No. 1 County of Denver*, No. 12-cv-02950-MSK-MEH, 2014 WL 983521, at *5 (D. Colo., March 13, 2014); *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1177 (10th Cir. 2011); *Bush v. FedEx Freight, Inc.*, No. 12-cv-00230-WYD-KLM, 2013 WL 4496391 (D. Colo. Aug. 22, 2013); *Watershed LLC v. Columbus Life Ins. Co.*, No. 09-cv-01496-MSK-MEH, 2011 WL 3359556 at *2 (D. Colo. Aug. 3, 2011); *Four Corners Nephrology Assoc. v. Mercy Med. Ctr.*

---

[11] Moreover, Defendant should not be penalized for using a more global disclosure such as "Any person identified or disclosed by Plaintiff" and "Any person whose identity is revealed during discovery," (*see* Plaintiff's Ex. 1) as opposed to Plaintiffs' shotgun approach of designating 57 witnesses in their initial disclosures and 97 witnesses in their second initial disclosures.

*of Durango*, No. 05-cv-02084-PSF-CBS, 2007 WL 1613352, at *2 (D. Colo. June 1, 2007). Defendant has made repeated offers to allow Plaintiffs to depose recently-disclosed witnesses who were not already disclosed by Plaintiff.

Pursuant to the Amended Scheduling Order, Plaintiffs were allowed twenty (20) depositions, of which they took only eight (8). Plaintiffs' counsel previously indicated during the discovery period that he intended to interview front line supervisors (sergeants), without the City's attorneys present, because he did not believe that the sergeants were ranked highly enough to require the City's presence at the deposition. *See* Ex. G. Plaintiffs' counsel must have moved forward with that plan, as he disclosed Sgt. Megan Middleton in Plaintiffs Fifth Supplemental Disclosures after the end of the discovery period. Ex. E.

These sergeants are many of the very same people included in the City's supplemental disclosures. Plaintiffs will not be prejudiced in time because a final Pretrial Order has not entered and there is no trial date. Moreover, trial will likely not take place until the late fall at the earliest in light of the amount of time needed for trial, the Court's schedule, and the fact that the City plans on filing a Rule 702 motion with regard to Plaintiffs' experts. The briefing and hearing on this motion will take two-three months. Thus, there is time for Plaintiffs to take additional depositions if they truly believe they are needed. In addition, Plaintiffs will not be prejudiced in expense because they have taken only eight depositions in a fifteen-Plaintiff case, thus the expense of additional depositions is reasonable and should have been anticipated. Because this is not a class action case, the Plaintiffs have to prove their claims as to each of the 15 Plaintiffs, which will require much more evidence – including witnesses – than a class action would require, as each Plaintiff must prove each element of each of their claims, and many of these Plaintiffs are very

differently situated from each other. Finally, Plaintiffs will not be prejudiced in effort because Plaintiffs' counsel previously already indicated an intent to interview many of the witnesses included in the supplemental disclosures.

Plaintiffs should not be rewarded for failing to diligently pursue the discovery they now believe they need on the eve of the Pretrial Conference by asking the Court to strike the City's witnesses for trial. *See Vanderhurst v. Colo. Mt. Coll. Dist.*, 16 F. Supp. 2d 1297, 1303 (D. Colo. 1998) (motions to strike are generally disfavored); *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) ("The decision to exclude evidence is a drastic sanction."). The Court should not rescue Plaintiffs from their chosen litigation strategy. Plaintiffs had ample opportunity to contact witnesses known to them at the beginning of the case, or who they learned about during depositions and document production, or to propound written discovery seeking additional information about them. *See Outback*, 2008 WL 3992172, at *17 ("Defendants had, but failed to exercise, the opportunity to ask for more specific information that could help them pick the witnesses to depose.").

Many of the witnesses listed in the City's Supplemental Disclosures were already disclosed by Plaintiffs in their disclosures, and two of them became relevant witnesses only at the end of 2017 and in 2018. *See* Ex. F. Moreover, many of the witnesses listed in the City's supplemental disclosures may be used for impeachment purposes. The witnesses are expected to testify in response to Plaintiffs' claims that they complained to supervisors and no action was taken. By its plain terms, Rule 26 does not require disclosure of individuals or documents "used solely for impeachment …." Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii). The City's inclusion of these witnesses in supplemental disclosures and in the Pretrial Order witness list, while arguably unnecessary, was

to provide the Court with an explanation of the proposed length of trial. Because most of the witnesses identified by the City since the discovery cutoff are impeachment witnesses, their disclosure was unnecessary and was certainly not a violation of Rule 26.

Finally, Plaintiffs' request for an award of sanctions should be denied. Plaintiffs have not offered any evidence supporting their theory that the City's supplemental disclosures were a product of bad faith or willfulness. The City's disclosures did not cause disruption to the summary judgment briefing, the Pretrial Order has not been finalized, and trial has not been set. Absence evidence of bad faith, barring the City from using the documents and witnesses at trial would be extremely prejudicial. The City did not act willfully or deceitfully in its supplement of its disclosure documents or witnesses. The Plaintiffs now want to take depositions that they should have taken months ago.

## CONCLUSION

For the reasons stated herein, Defendant respectfully requests that the Court deny the relief requested in Plaintiffs' Motion to Exclude.

Respectfully submitted on June 7, 2018.


JESSICA ALLEN
SHELBY A. FELTON
ASHLEY M. KELLIHER
Assistant City Attorneys

*s/ Jessica Allen*
Denver City Attorney's Office
Employment & Labor Law Section
201 W. Colfax Avenue, Dept. 1108
Denver, Colorado 80202
(720) 913-3100

E-mail:  jessica.allen@denvergov.org
E-mail:  shelby.felton@denvergov.org
E-mail:  ashley.kelliher@denvergov.org
E-mail:  dlefiling.litigation@denvergov.org
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2018, I electronically filed the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE WITNESSES AND EXHIBITS AND FOR A PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Wilbur C. Smith, Esq.
WILBUR C. SMITH P.C.
wil@civilcriminal.com

Brian T. Moore, Esq.
JESTER, GIBSON & MOORE, LLP
bmoore@jgllp.com

Niki Schwab, Esq.
JESTER, GIBSON & MOORE, LLP
nschwab@jgllp.com


*s/       Jessica Allen*
Denver City Attorney's Office