IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02539-CMA-STV

SAMONE WALKER et al.,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, DENVER SHERIFF DEPARTMENT,

    Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on the Motion for Legal Ruling Regarding Applicability of Continuing Violation Doctrine to Plaintiffs' Disparate Treatment Claims (the "Motion") [#141], filed by Defendant City and County of Denver, Denver Sheriff Department. The Motion has been referred to this Court. [#153] This Court has carefully considered the Motion and related briefing, the parties' brief oral argument on the Motion at a hearing on January 17, 2019 [#166], the entire case file and the applicable case law. For the following reasons, this Court respectfully **RECOMMENDS** that the Motion be **GRANTED** and that the Court hold that the continuing violation doctrine does not apply to Plaintiffs' disparate treatment claims.

**I.**    **BACKGROUND**

    Plaintiffs are fourteen women who are current or former Deputies with the Denver Sheriff Department. [#65 at ¶ 6] This case arises out of the alleged failure of Defendant to take reasonable steps to prevent sexual harassment against Plaintiffs by male inmates

1

while Plaintiffs performed their duties, and Defendant's practice of discriminating against Plaintiffs with respect to job assignments and other terms and conditions of their employment. [*See generally* #65]

Particularly relevant here, Plaintiffs allege that Defendant has disproportionately assigned Plaintiffs and other female deputies to the most dangerous and demanding deputy assignments, while their male counterparts are posted to more desirable assignments that require little to no inmate supervision, and less overtime and weekend work. [*Id.* at ¶¶ 36-41, 46-51] Plaintiffs explain that direct supervision of inmates in pods is the most dangerous and difficult deputy assignment, particularly when it involves working in open, larger pods. [*Id.* at ¶¶ 39-40]

According to Plaintiffs, Defendant has a general practice and explicit policy of only assigning female deputies to supervise female inmates. [*Id.* at ¶ 42] For example, most Plaintiffs were frequently assigned to direct supervision of female inmates in Building 21 as their regular work assignment. [*Id.*] Building 21 is known as the most difficult direct supervision assignment because of its layout, consisting of open pods that are larger than most other pods administered by Defendant, and because it is generally overcrowded and understaffed, resulting in an above-average inmate to deputy ratio. [*Id.* at ¶ 44] Building 21 is also a particularly demanding assignment because it houses inmates with behavioral, violence, and mental health issues alongside the general population. [*Id.*] On the rare occasions when male deputies are assigned to female pods, male deputies are not required to perform the same duties as female deputies, even though female deputies in male pods are expected to carry out the same duties as their male counterparts. [*Id.* at ¶ 55-56]

Even when Plaintiffs receive more desirable assignments, they are often subsequently reassigned to positions involving more direct inmate supervision. [*Id.* at ¶¶ 46-50] Several Plaintiffs have applied for special assignments requiring less direct inmate supervision, but those positions have been given to less qualified male deputies instead. [*Id.* at ¶¶ 45, 51] When Plaintiff Deputy Rasmussen requested assignment to the scout car, an assignment with significantly less direct inmate supervision, she was disparaged for thinking that she could do the job as a woman. [*Id.* at ¶ 45]

Apart from the greater demands and risks placed on female deputies by Defendant's assignment practices, these practices also jeopardize the advancement prospects of Plaintiffs and other female deputies. [*Id.* at ¶ 57] With fewer opportunities to gain wide-ranging experiences, including through special assignments, Plaintiffs have less leverage when seeking promotions and other career advancements. [*Id.*]

Plaintiffs filed suit alleging hostile work environment and disparate treatment claims. [#65] On October 19, 2018, Defendant filed the instant Motion. [#141] Plaintiffs have filed a response [#146] and Defendant has replied [#156].

## II. ANALYSIS

The question before the Court is whether the continuing violation doctrine applies to Plaintiffs' disparate treatment claims, such that Plaintiffs may recover for discriminatory acts that occurred prior to the statutory limitations period. [*See generally* #141]; *see also Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003). As discussed below, the Court believes that Plaintiffs advance a persuasive argument. Nevertheless, the Court is bound by Tenth Circuit authority and, based on that authority, the Court must

conclude that the continuing violation doctrine does not apply to Plaintiffs' disparate treatment claims.

## A. Continuing Violation Doctrine and Disparate Treatment Claims

"Under Title VII, a person must file a charge of discrimination with the [Equal Employment Opportunity Commission ("EEOC")] within 300 days of the alleged unlawful employment practice before filing a lawsuit in federal court." *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1169 n.1 (10th Cir. 2018) (citing 42 U.S.C. § 2000e-5(a)). The EEOC filing "is a prerequisite to a civil suit under Title VII and a claim is time-barred if it is not filed within these limits." *Davidson*, 337 F.3d at 1183. But, under certain circumstances, "a plaintiff may recover for discriminatory acts that occurred prior to the statutory limitations period if they are part of a continuing policy or practice that includes the act or acts within the statutory period." *Id.* at 1183 (quotation omitted); *see also Burkley v. Corr. Healthcare Mgmt. of Okla., Inc.*, 141 F. App'x 714, 716 (10th Cir. 2005) ("The continuing violation doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period."). To establish a continuing violation, a plaintiff must demonstrate "either that (1) a series of related acts was taken against [her], with one or more of those acts occurring within the limitations period, or (2) the defendant maintained a company-wide policy of discrimination both before and during the limitations period." *Davidson*, 337 F.3d at 1183-84.

The Supreme Court limited this rule in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In *Morgan*, "the Supreme Court held that a continuing violation theory of discrimination is not permitted for claims against discrete acts of

4

discrimination, such as termination, failure to promote, denial of transfer, or a refusal to hire." *Id.* at 1184. Because "discrete acts are easily identifiable and individually actionable," the Supreme Court reasoned that such acts occurring "outside of the limitations period, even though related to those occurring within the period, are not actionable." *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1202 (10th Cir. 2002) (citing *Morgan*, 536 U.S. at 114). Accordingly, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. In contrast, the Supreme Court found that the unlawful employment practices underlying a hostile work environment claim "cannot be said to occur on any particular day." *Id.* at 115. Instead, the acts "occur[] over a series of days or perhaps years," and "a single act of harassment may not be actionable on its own." *Id.*

At the heart of the instant Motion is the parties' disagreement with respect to whether a claim for disparate treatment is based on a discrete act, requiring Plaintiffs to file a separate EEOC charge for each incident giving rise to a disparate treatment claim. Defendant's position is that a claim for disparate treatment arises from a discrete act and, as a result, every instance of disparate treatment claimed by Plaintiffs must have occurred within the limitations period, thereby precluding application of the continuing violation doctrine. [#141] In other words, Defendants argue that to be actionable, each instance of Plaintiffs receiving an assignment on the basis of their gender must have occurred within the 300 days prior to the EEOC charge filing. [*See generally* #156] Plaintiffs respond that they "would not have a viable claim for disparate treatment" based on "one incident of being assigned to Building 21 or being reassigned from a non-inmate supervisory post." [#146 at 3-4] Instead, Plaintiffs argue, "[s]uch assignments and

5

reassignments become actionable only once they are strung together in a series, and once the cumulative effect of this discriminatory pattern rises to the level of an adverse employment action." [*Id.* at 4]

### B. Merit of Plaintiffs' Position

Plaintiffs can prove a disparate treatment claim "either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)]." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015). Here, in the absence of an explicit policy that Defendant disproportionately assigned Plaintiffs to Building 21 and other less desirable assignments because they are female, Plaintiffs must rely upon the *McDonnell Douglas* framework.

Under that framework, Plaintiffs must show that: (1) they are members of a protected class; (2) they suffered an adverse employment action; (3) they were qualified for the position at issue; and (4) they were treated less favorably than others not in the protected class. *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007). An adverse employment action "includes significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quotation omitted). But "a mere inconvenience or an alteration of job responsibilities" does not qualify as an adverse employment action. *Id.* (quotation omitted). Likewise, "[m]inor or trivial employment actions do not rise to the level of 'adverse actions,' and 'not everything that makes an employee unhappy is [] actionable.'" *White v. Schafer*, 738 F. Supp. 2d 1121, 1134 (D.

6

Colo. 2010) (quoting *Robinson v. Cavalry Portfolio Servs., LLC*, 365 F. App'x 104, 114 (10th Cir. 2010)), *aff'd*, 435 F. App'x 764 (10th Cir. 2011).

For example, "being assigned to perform tasks that are part of the employee's normal job duties," including work in a certain housing unit "or performing strip searches" at a detention facility, "are not adverse actions." *Andrews v. GEO Grp., Inc.*, No. 10-cv-02605-MSK-MJW, 2012 WL 4478803, at *6 (D. Colo. Sept. 28, 2012) (citing *Piercy*, 480 F.3d at 1204 n.13). Herein lies the issue for Plaintiffs, and where the Court finds Plaintiffs' position has traction. If an assignment to a given pod is part of the regular job responsibilities of a deputy, the Court fails to see how Plaintiffs could demonstrate an adverse action for a single assignment to Building 21. *Cf. Morgan*, 536 U.S. at 115 ("[I]n direct contrast to discrete acts, a single act of harassment may not be actionable on its own."). The *Morgan* Court explained that employment acts such as termination, failure to promote, denial of transfer, or refusal to hire, if discriminatory or retaliatory in nature, are discrete because each "constitutes a separate actionable unlawful employment practice." *Id.* at 114 (quotation omitted); *see also EEOC v. Jackson Nat'l Life Ins. Co.*, No. 16-cv-02472-PAB-SKC, 2018 WL 4360442, at *5 n.4 (D. Colo. Sept. 13, 2018) (defining discrete acts as "instances of discrimination or retaliation that are independently actionable"). Here, in contrast, an assignment to Building 21 on its own would not be actionable if such an assignment is a regular deputy responsibility, and thus a singular job assignment would not prompt Plaintiffs to file an EEOC discrimination charge.

Therefore, the Court finds persuasive Plaintiffs' position that they need to rely on their assignments to less desirable posts in the collective, in order to demonstrate an adverse employment action from those assignments. Applying the continuing violation

7

doctrine would allow the Court to consider Plaintiffs' work assignments over time to assess their cumulative effects, provided that at least some assignments occurred within the limitations period. *See Burkley*, 141 F. App'x at 716. Were the Court bound only by Supreme Court authority, the Court would agree with Plaintiffs that the continuing violation doctrine could apply to their claims.

Alternatively, Plaintiffs' allegations suggest a policy of discrimination by Defendant. Like the Tenth Circuit, the Sixth Circuit had recognized a continuing violation in one of two circumstances: (1) a series of related acts, "where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation such as where an employer continues to presently impose[] disparate work assignments"; or (2) "a long-standing and demonstrable policy of discrimination" by defendant.[1] *Sharpe v. Cureton*, 319 F.3d 259, 266-67 (6th Cir. 2003) (quotation omitted), *cert. denied*, 540 U.S. 876 (2003); *see also Davidson*, 337 F.3d at 1183-84. In *Sharpe v. Cureton*, the Sixth Circuit interpreted *Morgan* as limiting the first category, finding that plaintiffs could no longer establish a continuing violation "by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the

---

[1] Alleging a policy of discrimination under the continuing violation doctrine is different than making a pattern or practice discrimination claim. In *Morgan*, the Supreme Court explicitly left open the question of whether the continuing violation would apply to a pattern or practice claim. 536 U.S. at 115 n.9. Some courts have found that the "very nature" of a pattern or practice claim, like a hostile work environment claim, involves repeated conduct, and thus the continuing violation doctrine is still viable for those claims. *Murdock-Alexander v. Tempsnow Employment*, No. 16-cv-5182, 2016 WL 6833961, at *11-*12 (N.D. Ill. Nov. 21, 2016); *see also See EEOC v. Horizontal Well Drillers, LLC*, No. CIV-17-879-R, 2018 WL 3029108, at *8, *8 n.12 (W.D. Okla. June 18, 2018). But the Tenth Circuit has held that "the pattern or practice method of proof is available only to the government and class actions," and Plaintiffs do not assert such claims here (nor could they in the absence of a class action). *Semsroth v. City of Wichita*, 304 F. App'x 707, 715 (10th Cir. 2008)

8

limitations period." 319 F.3d at 268. But the court held that *Morgan* did not implicate the second type of continuing violation, involving a longstanding and demonstrable policy of discrimination. *Id.*

Applying that holding in *Morningstar v. Circleville Fire & EMS Department*, the Southern District of Ohio concluded that for the purposes of plaintiff's disparate treatment claim, plaintiff had "demonstrated a longstanding and demonstrable policy of discrimination, so her allegations f[ell] into the continuing violation category that remain[s] untouched" after *Morgan* and *Sharpe*. No. 2:15-cv-3077, 2018 WL 1365842, at *8 (S.D. Ohio Mar. 16, 2018). The court held that remarks by the fire department captain that "[u]nfortunately" it was time to allow a female into the department, "in conjunction with the multitude of incidents" that plaintiff had endured at the fire department over a decade— including being placed on a probationary period that no other firefighter had been required to complete, having gear and equipment tampered with, being told not to apply for a promotion, incidents of verbal and sexual harassment, and shift reassignments—were "sufficient to show a longstanding and demonstrable policy of discrimination." [2] *Id.*; *see also id.* at *1-*3. Accordingly, the court "consider[ed] all of the evidence in analyzing the disparate treatment claim," including the acts that occurred outside of the limitations period. *Id.* at *7-*8.

---

[2] The court also recognized that generally a plaintiff "must demonstrate 'more than the existence of discriminatory treatment in [her] case,'" to satisfy the longstanding policy of discrimination prong. *Morningstar*, 2018 WL 1365842, at *8 (quoting *Wu v. Tyson Foods, Inc.*, 189 F. App'x 375, 379 (6th Cir. 2006)). A plaintiff must "introduce evidence that proves 'that some form of intentional discrimination against the class of which [she] was a member was the company's standard operating procedure.'" *Wu*, 189 F. App'x at 379 (quoting *Sharpe*, 319 F.3d at 268). But in *Morningstar*, plaintiff was "undisputedly the first female ever hired as a full-time firefighter" by defendants, and thus did not need to make that showing. 2018 WL 1365842, at *8.

This Court finds this reasoning persuasive here, and notes that Plaintiffs have included many allegations that could support a finding that Defendant has a longstanding policy of assigning female deputies to less desirable posts. [*See generally* #65 at ¶¶ 35-37] Once again, absent the Tenth Circuit precedent set forth below, the Court would conclude that Plaintiffs could proceed on a continuing violation theory.

### C. Tenth Circuit authority, binding on this Court, prohibits the application of the continuing violation doctrine to disparate treatment claims

In this Court's view, the Supreme Court has not explicitly determined whether all disparate treatment claims are based on discrete acts, and thus whether the continuing violation doctrine is categorically inapplicable to disparate treatment claims. The *Morgan* Court did not explore the full contours of which claims are made up of discrete acts and which claims are made up of a series of acts. Instead, the Supreme Court simply recognized a hostile work environment claim as an example of a claim that "is composed of a series of separate acts that collectively constitute one unlawful employment practice," 536 U.S. at 117 (quotation omitted), and noted that "termination, failure to promote, denial of transfer, or refusal to hire," are examples of discrete acts, *id.* at 114.

Nonetheless, the Tenth Circuit and several district courts in this Circuit have understood *Morgan* as holding that the continuing violation doctrine *only* applies to hostile work environment claims.[3] *See, e.g.*, *Semsroth v. City of Wichita*, 304 F. App'x 707, 715 (10th Cir. 2008); *Ogu v. Pathfinder*, No. CIV-16-296-D, 2018 WL 6173890, at *4 (W.D.

---

[3] As outlined herein, this Court respectfully disagrees with that interpretation. *See Horizontal Well Drillers*, 2018 WL 3029108, at *8, *8 n.12 (finding continuing violation doctrine applied to pattern or practice claims brought by the EEOC, and rejecting interpretation that the continuing violation doctrine only applied to hostile work environment claims).

10

Okla. Nov. 26, 2018); *Carrero v. Arapahoe Cty. Sheriffs Office*, No. 05-cv-02414-MSK-CBS, 2006 WL 2594472, at *3 (D. Colo. Sept. 11, 2006). Indeed, the Tenth Circuit has held that "a claim for disparate treatment is based on a discrete act" and thus the continuing violation doctrine cannot apply to disparate treatment claims. *Payan*, 905 F.3d at 1168; *see also Brown v. Lowe's Home Ctrs.*, 627 F. App'x 720, 725 (10th Cir. 2015) ("Mr. Brown's reliance on the continuing violation doctrine is . . . misguided, for this doctrine does not apply to claims involving disparate treatment.").

The Tenth Circuit's categorical conclusion will *ordinarily* prove accurate. The Court agrees that, generally, "claims of disparate treatment involve 'discrete acts' that are 'easy to identify,'" and therefore "instance[s] of disparate treatment claimed must have occurred within the limitations period." *White*, 738 F. Supp. 2d at 1132 (quoting *Morgan*, 536 U.S. at 114). For example, in *Payan v. United States Parcel Service*, the Tenth Circuit concluded that plaintiff's claim for disparate treatment was based on the discrete act of UPS downgrading plaintiff from his promotion eligibility, due to his race. 905 F.3d at 1169. The downgrade was readily identifiable and constituted a discrete act of disparate treatment.

For the reasons outlined in Section II.B, however, in certain circumstances, such as those presented here, the "discrete act" of disparate treatment is not as readily identifiable. Neither *Morgan* nor the prior Tenth Circuit cases have dealt with the specific circumstances raised by this case. Nonetheless, this Court is bound by the Tenth Circuit's categorical conclusion that "a claim for disparate treatment is based on a discrete act" and, as a result, the continuing violation doctrine cannot apply to disparate treatment

11

claims.[4] *Payan*, 905 F.3d at 1168; *see also Brown*, 627 F. App'x at 725 ("Mr. Brown's reliance on the continuing violation doctrine is . . . misguided, for this doctrine does not apply to claims involving disparate treatment."). Accordingly, being bound by this precedent, the Court respectfully **RECOMMENDS** that the district court hold that Plaintiffs may not rely on a continuing violation theory for the purposes of their disparate treatment claims.

### D. CONCLUSION

For the foregoing this Court respectfully **RECOMMENDS** that Defendant's Motion [#141] be **GRANTED** and the Court hold that the continuing violation theory does not apply to Plaintiffs' disparate treatment claims.[5]

---

[4] Unlike the Sixth Circuit, the Tenth Circuit has concluded that the *Morgan* Court's holding applies "even if the discrete act was part of a company-wide or systemic policy." *Davidson*, 337 F.3d at 1185-86. *Davidson* thus precludes this Court from adopting the approach of the *Morningstar* Court.

[5] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the Magistrate Judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review Magistrate Judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of Magistrate Judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the Magistrate Judge's ruling by failing to file objections). *But see, Morales-*

DATED: March 21, 2019                    BY THE COURT:

                                                                s/Scott T. Varholak
                                                                United States Magistrate Judge

---

*Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).